This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 57
The Burlington Insurance Company,
          Appellant,
     v.
NYC Transit Authority, et al.,
          Respondents.

          Joseph D'Ambrosio, for appellant.
          Charles R. Strugatz, for respondents.
          Turner Construction Company, amicus curiae.

RIVERA, J.:

          We conclude that where an insurance policy is restricted to liability for any bodily injury "caused, in whole or in part" by the "acts or omissions" of the named insured, the coverage applies to injury proximately caused by the named insured.  The Appellate Division erroneously interpreted this

- 1 -

policy language as extending coverage broadly to any injury causally linked to the named insured, and wrongly concluded that an additional insured may collect for an injury caused solely by its own negligence, even where the named insured bears no legal fault for the underlying harm.  We reject this "but for" causation formulation of the policy and, on this appeal, reverse the Appellate Division's denial of summary judgment in favor of the insurance company on the issue of coverage.

I.

Plaintiff, The Burlington Insurance Company (Burlington), issued an insurance policy to nonparty Breaking Solutions, Inc. (BSI) listing as additional insureds defendants, the New York City Transit Authority (NYCTA) and MTA New York City Transit (MTA).  Burlington denied coverage to NYCTA and MTA on the grounds that defendants were not additional insureds within the meaning of the policy because NYCTA was solely responsible for the accident that caused the injury.  This appeal requires that we interpret whether the additional insured language of the policy provides coverage where the named insured is not negligent.

According to the undisputed facts, NYCTA contracted with BSI to provide equipment and personnel and for BSI to perform tunnel excavation work on a New York City subway construction project.  To comply with NYCTA's insurance

requirements, BSI purchased commercial general liability insurance from Burlington with an endorsement that listed NYCTA, MTA, and New York City (City) as "additional insureds."[1] As specified by NYCTA, BSI agreed to use language in the endorsement adopted from the latest form issued by a trade organization known as the Insurance Services Office (ISO), and which provides, in relevant part, that NYCTA, MTA, and the City are additional insureds:

> ". . . only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf."

During the coverage period, an NYCTA employee fell off an elevated platform as he tried to avoid an explosion after a BSI machine touched a live electrical cable buried in concrete at the excavation site. The employee and his spouse brought an action against the City and BSI in federal court, asserting Labor Law claims, negligence, and loss of consortium (Kenny v City of N.Y., 2011 WL 4460598 [ED NY, Sept. 26, 2011]).

Pursuant to BSI's policy, the City tendered its defense

---

[1] The record contains two separate documents referred to as "endorsements" to the Burlington policy. Although only one lists NYCTA, MTA, and the City as additional insureds, on this appeal the parties treat all three as listed under an "endorsement." Since the disputed causation language is identical in both documents, we adopt the parties' reference to the source of coverage as a single "endorsement."

in the federal action to Burlington, which Burlington accepted subject to a reservation of rights based on the City's qualification as an additional insured. Burlington withdrew its reservation, however, after receiving NYCTA's letter to BSI that it would not make payments under the contract unless Burlington agreed to provide coverage for the City's defense and indemnification without reservation.

Meanwhile, the City impleaded NYCTA and MTA in the employee's action and asserted third party claims for indemnification and contribution, based on a lease between NYCTA and the City as a property owner of certain transit facilities. Under Article 6, Section 6.8 of that lease agreement, NYCTA agreed to indemnify the City for liability "arising out of or in connection with the operation, management[,] and control by the [NYCTA]" of the leased property.[2]

NYCTA tendered its defense of these claims to Burlington, also as an additional insured under the BSI policy. Burlington accepted the defense, subject to the same reservation that NYCTA qualify as an additional insured under the policy endorsement. NYCTA did not demand, and Burlington did not

---

[2] MTA is not a named party to the lease because that entity did not exist at the time NYCTA and the City entered the agreement. However, NYCTA is an affiliate of MTA pursuant to section 1263 of the Public Authorities Law, added in 1965, which renders MTA the "parent agency" of NYCTA (see Metropolitan Transit Authority, New York City Transit - History and Chronology, web.mta.info/nyct/facts/ffhist.htm [last visited May 2, 2017]; Public Authorities Law § 1263).

submit, a withdrawal of this reservation.

Discovery in the employee's federal lawsuit revealed that NYCTA failed to identify, mark, or protect the electric cable, and that it also failed to turn off the cable power. Documents further established that the BSI machine operator could not have known about the location of the cable or the fact that it was electrified. For example, in two internal memoranda, NYCTA acknowledged its sole responsibility for the accident. In the first, the NYCTA superintendent explained that "the excavation equipment operators were operating the equipment properly and had no way of knowing that the cable was submerged in the invert." The second memorandum concluded that "this accident was primarily due to an inadequate/ineffective inspection process for identifying job-site hazards involving buried energized cables." Based on these revelations, Burlington disclaimed coverage of NYCTA and MTA, asserting that BSI was not at fault for the injuries and therefore NYCTA and MTA were not additional insureds under the policy.

The district court dismissed the employee's claims against BSI with prejudice, and the City's third-party claims against NYCTA without prejudice. Burlington thereafter settled the lawsuit for $950,000 and paid the City's defense costs.

Burlington commenced the underlying action in state court after disclaiming coverage for NYCTA and MTA. Initially, Burlington sought a declaratory judgment that it did not owe

NYCTA and MTA coverage as additional insureds under BSI's policy. After settling the employee's action against the City, Burlington moved to amend its complaint to add a claim for contractual indemnification as the City's subrogee under the lease with NYCTA.

Supreme Court granted Burlington's motion for summary judgment, concluding that NYCTA and MTA were not additional insureds because the policy limited liability to instances where BSI, as the named insured, was negligent. The court also granted Burlington's motion to amend the complaint, finding that the anti-subrogation rule did not bar Burlington's claim as the City's subrogee. Burlington then moved for partial summary judgment on its contractual indemnification claim against NYCTA, which the court granted and subsequently entered judgment for Burlington for the $950,000 settlement amount, along with prejudgment interest, fees, and costs.

The Appellate Division reversed, denying plaintiff's motions for summary judgment and to amend the complaint, and granting defendants' cross motion for summary judgment on the first cause of action to the extent of declaring that defendants were entitled to coverage as additional insureds under the Burlington policy (132 AD3d 127 [1st Dept 2015]). The court concluded that the named insured was not negligent, but "the act of triggering the explosion . . . was a cause of [the employee's] injury" within the meaning of the policy (132 AD3d at 134-135).

The court also determined that as a consequence, it "necessarily follows that the anti-subrogation rule bars Burlington from recovering, as the City's subrogee" (id. at 138).  We granted Burlington leave to appeal (27 NY3d 905 [2016]).

## II.

Burlington argues that under the plain meaning of the endorsement NYCTA and MTA are not additional insureds because the acts or omissions of the named insured, BSI, were not a proximate cause of the injury.  Put another way, Burlington maintains that the coverage does not apply where, as here, the additional insured was the sole proximate cause of the injury.

In response, NYCTA and MTA also rely on the policy language, but claim that by its express terms the endorsement applies to *any* act or omission by BSI that resulted in injury, regardless of the additional insured's negligence.  They further argue that the Appellate Division properly concluded that BSI's operation of its excavation machine provided the requisite causal nexus between injury and act to trigger coverage under the policy.

Burlington has the better argument.  Applying the relevant legal principles to the policy language, we conclude that there is no coverage because, by its terms, the policy endorsement is limited to those injuries proximately caused by BSI.

A.

"An insurance agreement is subject to principles of contract interpretation" (Universal Am. Corp. v Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015]). Therefore, "[a]s with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court'" (Vigilant Ins. Co. v Bear Stearns Companies, Inc., 10 NY3d 170, 177 [2008], quoting White v Continental Cas. Co., 9 NY3d 264, 267 [2007] [citations omitted]).

The policy here states, in relevant part, that an entity is "an additional insured only with respect to liability for 'bodily injury' caused, in whole or in part, by [BSI's] acts or omissions." The defendants argue that the endorsement does not limit liability to cases in which an insured's acts or omissions are negligent or otherwise legally actionable. Essentially, they advocate that "caused, in whole or in part" means "but for" causation. Under their reading of the policy, all that is necessary for an additional insured to be covered is that the insured's conduct be a causal link to the injury. This is an incorrect interpretation of the policy language, which by its terms, describes proximate causation and legal liability based on the insured's negligence or other actionable deed.

B.

It is well established in our law that "but for" causation, or causation in fact, is "[t]he cause without which the event could not have occurred" (Black's Law Dictionary [10th ed. 2014], but-for cause; Dan B. Dobbs et al., Torts § 186 [2d ed. 2011]; see also Koehler v Schwartz, 48 NY2d 807, 808-809 [1979]; 14 New York Practice Series: New York Law of Torts § 8:3]). The term refers to a link in the chain leading to an outcome, and in the abstract does no more than state the obvious, that "any given event, including an injury, is always the result of many causes" (Dobbs, § 189). However, not all "but for" causes result in liability and "[m]ost causes can be ignored in tort litigation" (id.). In contrast, "proximate cause" refers to a "legal cause" to which the Court has assigned liability (Derdiarian v Felix Contracting Corp., 51 NY2d 308, 314 [1980]; see Hain v Jamison, 28 NY3d 524, 528-529 [2016] ["the determination of proximate cause involves, among other things, policy-laden considerations; that is, the chain of causation must have an endpoint in order 'to place manageable limits upon the liability that flows from negligent conduct'"]). The dissent suggests that "proximate cause" and "but-for cause" may be equivalent concepts (dissenting op at 14), but the law is clear that the two are not synonymous (see Dobbs, § 189). As the Court has explained, "'because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a

series of events beyond a certain point'" (<u>Ventricelli v Kinney Sys. Rent A Car, Inc.</u>, 45 NY2d 950, 952, amended 46 NY2d 770 [1978], quoting <u>Palsgraf v Long Is. R. R. Co.</u>, 248 NY 339, 352 [1928] [Andrews, J., dissenting]).

Here, the Burlington policy endorsement states that the injury must be "caused, in whole or in part" by BSI. These words require proximate causation since "but for" causation cannot be partial. An event may not be wholly or partially connected to a result, it either is or it is not connected. Stated differently, although there may be more than one proximate cause, all "but for" causes bear some connection to the outcome even if all do not lead to legal liability. Thus, these words -- "in whole or in part" -- can only modify "proximate cause" (<u>see</u> Dobbs § 189; Black's Law Dictionary, proximate cause; <u>Hain v Jamison</u>, 28 NY3d at 529). Defendants' interpretation would render this modification superfluous, in contravention of the rule that requires us to interpret the language "in a manner that gives full force and effect to the policy language and does not render a portion of the provision meaningless" (<u>Cragg v Allstate Indem. Corp.</u>, 17 NY3d 118, 122 [2011] [internal citations omitted]).

NYCTA and MTA argue that the language "in whole or in part" was necessary in order to make clear that the parties did not mean "solely caused by." Without the additional language, they contend, the endorsement would provide NYCTA and MTA coverage only if BSI's acts or omissions were solely responsible

for the loss.  We find this argument is unpersuasive because the phrases "caused, in whole or in part, by" and "solely caused by" are not synonymous, either by their plain meaning or legal effect (see Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 561 n 2 [1999] [the Court considered "the proximate cause" to mean "a proximate cause" since "there may be more than one proximate cause of an injury"]; see also NY PJI 2:70, Comment Caveat 1).

The endorsement's reference to "liability" caused by BSI's acts or omissions further confirms that coverage for additional insureds is limited to situations where the insured is the proximate cause of the injury.  Liability exists precisely where there is fault (Dobbs, § 2 ["torts are traditionally associated with wrongdoing" and "[i]n the great majority of cases today, tort liability is grounded in the conclusion that the wrongdoer was at fault in a legally recognizable way"]).  That the policy extends coverage to an additional insured "only with respect to liability" establishes that the "caused, in whole or in part, by" language limits coverage for damages resulting from BSI's negligence or some other actionable "act or omission."

Since the endorsement language stands on its own, we reject the parties' and the dissent's central premise that if the parties meant "proximate causation," they would have included

those words in the endorsement.[3]  This argument ignores the

import of the endorsement's actual language and the rule that we

must interpret that language "in a manner that gives [it] full

force and effect . . . and does not render a portion of the

provision meaningless" (Cragg, 17 NY3d at 122).  As our law makes

clear, it is enough that the parties used words that convey the

legal doctrine of proximate causation.  The fact that the parties

could have used different language to communicate that legal

concept is not fatal to Burlington's argument.  Giving the words

chosen by the parties their plain and ordinary meaning, the

endorsement describes proximate cause (see Vigilant Insurance, 10

NY3d at 177).  Contrary to the dissent's view, our reference to

legal terminology does not signal a departure from the rule that

we apply a "plain and ordinary meaning" to the policy language

(dissenting op at 12, 18).  The endorsement expresses in lay

terms what the courts have long defined as "proximate causation."

Our conclusion as to the legal import of the parties' chosen

words does not subject the policy to some heightened standard of

contract interpretation.

　　　　We similarly reject defendants' invitation to adopt the

First Department's conclusion, based on its prior decisions, that

the phrase "'caused by' 'does not materially differ from the

---

[3] We find the dissent's assertion of this argument
especially perplexing given that the dissent claims our analysis
is flawed for applying legal meaning to the plain words contained
in the endorsement (dissenting op at 12).

phrase, 'arising out of'" and results in coverage even in the absence of the insured's negligence (Burlington Ins. Co. v NYC Transit Authority, 132 AD3d at 135, citing W & W Glass Sys., Inc. v Admiral Ins. Co., 91 AD3d 530 [1st Dept 2012]; National Union Fire Ins. Co. of Pittsburgh, PA v Greenwich Ins. Co., 103 AD3d 473 [1st Dept 2013]).  Since the parties did not use the phrase "arising out of," the First Department's analogy is inapt.  All that matters is the language adopted by the parties to the insurance policy at issue in this appeal.  For the reasons we have explained, "caused, in whole or in part" as used in the endorsement, requires the insured to be the proximate cause of the injury giving rise to liability, not merely the "but for" cause.  Furthermore, "arising out of" is not the functional equivalent of "proximately caused by" (see Maroney v New York Cent. Mut Fire Ins. Co., 5 NY3d 467, 472 [2005], citing Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., 91 AD2d 317, 320-321 [4th Dept 1983] [reasoning that the phrase "arising out of" is "ordinarily understood to mean originating from, incident to, or having connection with"]; see also Worth Construction Co., Inc. v Admiral Ins. Co., 10 NY3d 411, 415 [2008], quoting Maroney, 5 NY3d at 472; Regal Construction v National Union Fire Ins. Co. of Pittsburg, PA, 15 NY3d 34, 38 [2010], quoting Maroney, 5 NY3d at 472).

While we agree with the dissent that interpreting the phrases differently does not compel the conclusion that the

endorsement incorporates a negligence requirement (dissenting op at 17 n 9), it does compel us to interpret "caused, in whole or in part" to mean more than "but for" causation (see Maroney, 5 NY3d at 472; Regal Constr., 15 NY3d at 39). That interpretation, coupled with the endorsement's application to acts or omissions that result in liability, supports our conclusion that proximate cause is required here.

Case law from other jurisdictions makes a similar distinction. The Texas Supreme Court, for example, has held that "'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate cause" (Utica Nat. Insc. Co. of Texas v American Indem. Co., 141 SW3d 198, 203 [Tex Sup Ct 2004]). Similarly, the Pennsylvania Supreme Court has explained that, "'arising out of' means causally connected with, not proximately caused by" (Manufacturers Cas. Ins. Co. v Goodville Mut. Cas. Co., 403 Pa 603, 607–608 [Sup Ct 1961]). Furthermore, federal courts have rejected the interpretation espoused by the First Department. For example, in National Union Fire Ins. Co. of Pittsburgh, PA v XL Ins. America, Inc., the Southern District of New York expressly disapproved the First Department's approach, and held that "'caused by' requires a showing that [the named insured]'s operations proximately caused the bodily injury for which" indemnity was sought (2013 WL 1944468 at *7 [SD NY 2013]; see also Wausau Underwriters Ins. Co.

v Old Republic Gen. Ins. Co., 122 F Supp 3d 44, 52 [SD NY 2015] ["whether an injury was legally caused by a party's actions is a much more demanding question than whether the injury arose out of those actions"]). The Eastern District of Pennsylvania, when presented with the same additional insured endorsement language at issue in this appeal, held that "caused by" required "proximate cause" in order to trigger coverage (Dale Corp. v Cumerbland Mut. Fire Ins. Co., 2010 WL 4909600 at *7 [ED PA 2010]).

Here, BSI was not at fault. The employee's injury was due to NYCTA's sole negligence in failing to identify, mark, or deenergize the cable. Although but for BSI's machine coming into contact with the live cable, the explosion would not have occurred and the employee would not have fallen or been injured, that triggering act was not the proximate cause of the employee's injuries since BSI was not at fault in operating the machine in the manner that led it to touch the live cable.[4]

---

[4] The dissent argues that "the policy contains coverage for defendants with respect to the underlying matter inasmuch as the accident was produced by and would not have occurred absent BSI's operation of its excavation equipment" (dissenting op at 15 [internal citations omitted]). This interpretation would extend coverage to any and all but-for causes, including turning on and checking the machine the morning of the accident. Certainly the plain meaning of the phrase "caused by" does not ordinarily extend so far, nor could the dissent mean for coverage to extend to such remote circumstances.

III.

The dissent's concern that our "approach could threaten the stability and certainty of our bedrock rules of insurance policy interpretation" (dissenting op at 17) is unwarranted. Our opinion adheres to contract principles that the plain and ordinary meaning applies and that the parties may freely negotiate the terms of the policy. There is also no basis for the dissent's speculation that our decision may have a "destructive" impact on liability insurance coverage (dissenting op at 18). Our analysis should come as no surprise to the industry because the drafters of the language used here intended it to mean proximate causation.

In crafting the additional insured endorsement, NYCTA required that the policy include additional insured coverage using the latest ISO "Form CG 20 10 or equivalent." In 2004 -- four years before the parties entered the construction contract and BSI purchased insurance from Burlington -- the version of this ISO form was amended to replace the language "arising out of" with "caused, in whole or in part." The change was intended to provide coverage for an additional insured's vicarious or contributory negligence, and to prevent coverage for the additional insured's sole negligence (see Dale, 2010 WL 4909600, at *5 ["The ISO introduced this revised version of its widely used additional insured endorsements as a response to courts' interpretations of its prior version"]). In describing its

motivation for the 2004 amendment, ISO explained that it had "monitored various court decisions and found that courts in many disputes between insurers and insureds have construed broadly the phrase arising out of," and further that "some courts have ruled that . . . the current additional insured endorsements do respond to injury or damage arising from the additional insureds sole negligence" (Coverage for Additional Insured-Vendors: Recent Markdowns by ISO and New York's High Court, 19-36 Mealey's Litig. Rep. Ins. 11 [2005]).  This, the ISO explained was "contrary to the original intent of the additional insured endorsements" (id.).  At the heart of the amendment, therefore, was "the preclusion of coverage for an additional insured's sole negligence" (id.).

It is therefore defendant's interpretation that would lead to unanticipated results.  The purpose of additional insured coverage is to "apportion risks" (Trisha Strode, *From the Bottom of the Food Chain Looking Up: Subcontractors and the Full Costs of Additional Insured Endorsements*, Constr. Law., Summer 2005, at 21, 21-22).  "By hiring a subcontractor, a general contractor exposes itself to . . . liability risks, including vicarious responsibility for its subcontractor's negligence" and "[a]dditional insured endorsements represent a way to apportion contractually these risks" (id.).  The rationale is to "make the party with the most control over the risk responsible for suffering the financial loss should it fail to prevent the loss"

(id.).  Therefore, to extend coverage to the additional insureds under the circumstances of this case may frustrate the clear purpose of obtaining additional insured insurance in the first place (see 3 Couch on Ins. § 40:26 ["coverage for an additional insured is typically limited to liability arising out of the named insured's work or operations" and "additional insured status does not provide coverage to an additional insured for the additional insured's own work or operations"]).  It would allow NYCTA to compel a subcontractor to pay for injuries to its employee which NYCTA proximately caused -- an outcome not intended by the parties and contrary to the plain language of the endorsement.

Of course, if the parties desire a different allocation of risk, they are free to negotiate language that serves their interests.  Our decision should not be interpreted to limit the venerable right to contract on terms agreed to by the parties (see Chimart Assocs. v Paul, 66 NY2d 570, 574 [1986]).


IV.

Accordingly, the judgment appealed from, and order of the Appellate Division brought up for review should be reversed, with costs, plaintiff's motion for summary judgment on the first cause of action is granted, defendants' cross motion for summary judgment on the first cause of action is denied, and the case remitted to the Appellate Division for further proceedings in

accordance with this opinion.

The Burlington Ins. Co. v NYC Tr. Auth.

No. 57

FAHEY, J.(dissenting):

I respectfully dissent. Bedrock principles of insurance contract interpretation demand that we conclude that defendants are entitled to coverage with respect to the underlying matter as additional insureds under the policy of insurance issued to nonparty Breaking Solutions, Inc. (BSI) by plaintiff.

Facts

This declaratory judgment action overlies a personal injury action that had its genesis in the excavation of a subway tunnel in Brooklyn. In July 2008, defendant New York City Transit Authority (NYCTA) contracted with BSI for the supply of "concrete breakers" and related labor in connection with the project. Pursuant to the contract's insurance requirements, BSI was to obtain, among other things, $2 million in general liability insurance, with respect to which NYCTA, defendant MTA New York City Transit (MTA), and the City of New York (City) were to be named as additional insureds.

BSI honored that commitment and obtained from plaintiff a policy of insurance that, as relevant here, provided an

- 1 -

aggregate of $2 million in general liability coverage and contained an endorsement naming defendants as additional insureds thereunder. The subject endorsement (which bears form No. IFG-I-0160 1100) provides, in pertinent part, that defendants are additional insureds under the policy "with respect to liability for 'bodily injury' . . . *caused, in whole or in part, by[] [BSI's] acts or omissions . . . .*" (emphasis added).[1]

In February 2009, nonparty Thomas P. Kenny was employed by MTA in furtherance of the subject construction project. During the course of that work, an explosion and fire occurred when the drill of one of the machines supplied by BSI contacted a live electrical cable. At the time of the explosion, Kenny was

---

[1] This dispute actually implicates multiple additional insured endorsements. The endorsement on which defendants (and the majority [see majority op at 3]) rely bears form No. IFG-I-0160 1100 and confers additional insured status upon entities with respect to which BSI had "agreed in writing in a contract [would] be added as an additional insured on [the] policy." As noted, this conferral of coverage is a qualified one; pursuant to this endorsement, such entities are entitled to coverage as additional insureds "with respect to liability for 'bodily injury' . . . *caused, in whole or in part, by[] [BSI's] acts or omissions . . . .*" (emphasis added).

Plaintiff relies on a different endorsement, which bears form No. CG 20 26 07 04 and which designates NYCTA as an additional insured. Similar to the "other" endorsement, this amendment provides coverage with respect to liability for bodily injury "caused, in whole or in part, by [BSI's] acts or omissions . . . ." Inasmuch as the coverage afforded under each such endorsement essentially is the same, for the purposes of my analysis it is of no moment that the parties rely on different amendments in seeking to establish what, if any, coverage plaintiff may owe defendants with respect to the underlying action (cf. majority op at 16-17).

perched on a benchwall, and he fell from that elevated work location while trying to evacuate the tunnel following that incident.

Kenny and his wife subsequently commenced the underlying action (in which they asserted causes of action for common-law negligence and violation of Labor Law §§ 200, 240 [1], and 241 [6], as well as for loss of consortium) in the United States District Court for the Eastern District of New York.  BSI tendered the claims in that action to plaintiff under the policy, and plaintiff agreed to defend and indemnify BSI in that matter.  Although it did not immediately accept the City's separate tender of coverage with respect to the underlying action, plaintiff initially agreed to provide the City with a defense in that matter subject to a reservation of rights.

Afterwards, the City commenced a third-party action against defendants seeking contractual indemnification with respect to the claims asserted against the City in the underlying action.  Defendants, in turn, tendered coverage for the claims asserted against them in the third-party action to plaintiff, which agreed to defend defendants with respect thereto subject to a reservation of rights.  The reservation of rights was based on plaintiff's theory that "it ha[d] not been determined whether liability was caused by acts or omissions of [BSI]."

The reservation of rights also reflected a temporary coverage position.  According to plaintiff, discovery in the

underlying action revealed that MTA neither disconnected the electrical cable from a power supply nor warned BSI of that cable, and that the machines supplied by BSI were operated properly at the time of the explosion.  Said another way, discovery showed that the series of events giving rise to the Kennys' injuries began with defendants' failure to alert BSI to the "live" electrical cable, which allowed BSI to strike that cable, which, in turn, precipitated the explosion that injured Kenny.

Based on that evidence, plaintiff withdrew its defense and "disclaim[ed]" coverage for defendants in the underlying matter (cf. Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000] ["Disclaimer . . . is unnecessary when a claim falls outside the scope of the policy's coverage portion"]), reasoning that "the uncontroverted evidence establishes that the accident was solely caused by [defendants]."  In the meantime, however, plaintiff continued to defend the City in the underlying action, and the claims against the City eventually were settled through a payment plaintiff made to the Kennys on the City's behalf.[2]

By then, plaintiff had commenced this overlying coverage action seeking judgment declaring that defendants are not entitled to coverage under the policy with respect to the

_____

[2] The Kennys' claims against BSI were dismissed with prejudice on the Kennys' own motion.

underlying matter.  Following motion practice, Supreme Court, among other things, entered an order and judgment granting plaintiff summary judgment and making a declaration to that effect.

On appeal, the Appellate Division reversed the order and judgment and declared "that defendants were entitled to coverage in the underlying personal injury action as additional insured[s] under [the] policy" (132 AD3d 127, 139 [1st Dept 2015]; see id. at 134-138).  The Appellate Division noted that "[i]t is undisputed that Kenny's injury was causally connected to an 'act[]' of [BSI]" inasmuch as it was BSI's "disturbance of [a] buried electrical cable[] [that] triggered the explosion that led to Kenny's fall" (id. at 134).  The Appellate Division added that

> "[w]hile it is true that, because
> [defendants] had not warned the [BSI]
> operator of the cable's presence, [BSI's]
> 'act[]' did not constitute negligence, this
> does not change the fact that the act of
> triggering the explosion, faultless though it
> was on [BSI's] part, was a cause of Kenny's
> injury. The language of the relevant
> endorsement, on its face, defines the
> additional insured coverage afforded in terms
> of whether the loss was 'caused by' [BSI's]
> 'acts or omissions,' without regard to
> whether those 'acts or omissions' constituted
> negligence or were otherwise actionable" (id.
> at 134-135).

Given what apparently was the concern with the finality of the Appellate Division order -- it left pending the counterclaim defendants asserted for attorneys' fees pursuant to

the Mighty Midgets rule[3] -- Supreme Court entered a final
judgment that resolved the fee question and declared that
defendants "were entitled to coverage in the underlying personal
injury action as additional insureds under [the] policy."  We
granted plaintiff leave to appeal from that judgment (27 NY3d 905
[2016]).

                              Law


        "'In determining a dispute over insurance coverage, we
first look to the language of the policy'" (Lend Lease [US]
Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 681 [2017],
quoting Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98
NY2d 208, 221 [2002]).  "An insurance agreement," as the majority
notes, "is subject to principles of contract interpretation"
(Universal Am. Corp. v National Union Fire Ins. Co. of
Pittsburgh, Pa., 25 NY3d 675, 680 [2015]; see majority op at 8).
It also is true that, "'[a]s with the construction of contracts
generally, unambiguous provisions of an insurance contract must
be given their *plain and ordinary meaning*, and [that] the
interpretation of such provisions is a question of law for the

---

        [3] Under that rule, an insured "cast in a defensive posture
by the legal steps an insurer takes in an effort to free itself
from its policy obligations" may recover attorneys' fees and
expenses incurred in defending against the insurer's "affirmative
action . . . to settle its rights" where the insured prevails in
that action (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21
[1979]).

court'" (Lend Lease, 28 NY3d at 681-682 [emphasis added], quoting

Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170, 177

[2008]; see Universal Am. Corp., 25 NY3d at 680, quoting Cragg v

Allstate Indem. Co., 17 NY3d 118, 122 [2011] for the proposition

that "[i]nsurance contracts must be interpreted according to

common speech and consistent with the reasonable expectations of

the average insured"; see also majority op at 8).

    These core principles of insurance policy construction

are not the only bedrock rules relevant to this analysis (cf.

majority op at 8).  We recently reiterated that where a "'policy

may be reasonably interpreted in two conflicting manners, its

terms are ambiguous'" (Lend Lease, 28 NY3d at 682, quoting Matter

of Mostow v State Farm Ins. Cos., 88 NY2d 321, 326 [1996];  see

Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986] ["The initial

question() (in determining whether there is any ambiguity in the

language) is whether the agreement on its face is reasonably

susceptible of more than one interpretation"]).  More

specifically, we have said that "[a]mbiguity in a contract arises

when the contract, read as a whole, fails to disclose its purpose

and the parties' intent, *or* where its terms are subject to more

than one reasonable interpretation" (Universal Am. Corp., 25 NY3d

at 680 [emphasis added and internal quotation marks and citations

omitted]).

    To be sure, "parties cannot create ambiguity from whole

cloth where none exists, because provisions 'are not ambiguous

merely because the parties interpret them differently'"
(Universal Am. Corp., 25 NY3d at 680, quoting Mount Vernon Fire
Ins. Co. v Creative Hous., 88 NY2d 347, 352 [1996]; see Selective
Ins. Co. of Am. v County of Rensselaer, 26 NY3d 649, 655-656
[2016] ["A contract is unambiguous if the language it uses has a
definite and precise meaning, unattended by danger of
misconception in the purport of the (agreement) itself, and
concerning which there is no reasonable basis for a difference of
opinion"] [internal quotation marks omitted]).  "Rather, 'the
test to determine whether an insurance contract is ambiguous
focuses on the reasonable expectations of the *average insured*
upon reading the policy and employing *common speech*'" (Universal
Am. Corp., 25 NY3d at 680 [emphases added], quoting Mostow, 88
NY2d at 326-327; see Cragg, 17 NY3d at 122).  Of course, "'any
ambiguity must be construed in favor of the insured and *against
the insurer*'" (Lend Lease, 28 NY3d at 682 [emphasis added],
quoting White v Continental Cas. Co., 9 NY3d 264, 267 [2007]).


### Analysis

#### *The Coverage Question*

        The application of these canons to the subject
endorsement[4] demands that we conclude that defendants are

_____

        [4] As noted, the endorsement on which defendants (and the
majority) rely provides, in relevant part, that defendants are
additional insureds under the policy "with respect to liability
for 'bodily injury' . . . *caused, in whole or in part, by [BSI's]*

entitled to coverage with respect to the underlying matter as additional insureds under the policy.  The fact that the explosion and fire were sparked by an action of BSI (the named insured on the policy) means that BSI caused the explosion, and the fact that the explosion knocked Kenny from his elevated work area means that such blast caused the underlying accident.[5]  To that end, inasmuch as BSI contacted the live wire with one of its devices, it necessarily follows that BSI caused the injuries the Kennys sustained as a result of that incident.  Based on that series of events, it also necessarily follows that defendants are additional insureds under the plain and obvious meaning of the endorsement in question.

Indeed, "the existence of coverage [for defendants as additional insureds] does not depend upon a showing that [BSI's] causal conduct was negligent or otherwise at fault" (132 AD3d at 135).  The endorsement confers additional insured status where the mere *acts* of the named insured cause the bodily injury complained of.  If the drafter meant for such status to be contingent upon a *negligent act or acts* of the named insured,

---

*acts or omissions . . . ."* (emphasis added).

[5] Of course, there may be more than one cause of an accident (see generally Mazella v Beals, 27 NY3d 694, 706 [2016], citing Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 560 n 2 [1999]).  Based on their failure to alert BSI to the "live" electrical cable, defendants surely contributed to the happening of the accident.  That fault, however, does not mean that BSI's actions in contacting the wire were not a (non-negligent) cause of that incident.

then the policy easily could have said as much.  That is, the
policy could have afforded additional insured status "only with
respect to liability for 'bodily injury' . . . caused, in whole
or in part, by [the named insured's *negligent*] acts or
omissions."

Similarly, if the drafter intended that coverage under
the endorsement be contingent upon a showing of proximate cause,
as the majority defines that phrase (see majority op at 9; see
also infra at 13-14), then the policy easily could have been
written to contain that condition.  Specifically, the policy
could have conferred additional insured status "only with respect
to liability for 'bodily injury' [*proximately*] caused, in whole
or in part, by [the] acts or omissions [of the named insured]."
Inasmuch as the endorsement contains none of the aforementioned
qualifications, the cardinal rules of policy interpretation
require that we conclude that defendants are entitled to coverage
with respect to the underlying matter as additional insureds
under the policy.[6]

---

[6] Although not determinative of this coverage question, this
analysis is consistent with Appellate Division case law (see e.g.
Aspen Specialty Ins. Co. v Ironshore Indem. Inc., 144 AD3d 606,
607 [1st Dept 2016]; Kel-Mar Designs, Inc. v Harleysville Ins.
Co. of N.Y., 127 AD3d 662, 663 [1st Dept 2015]; Strauss Painting,
Inc. v Mt. Hawley Ins. Co., 105 AD3d 512, 513 [1st Dept 2013],
mod on other grounds 24 NY3d 578, 595-596 [2014], rearg
denied 24 NY3d 1217 [2015]; National Union Fire Ins. Co. of
Pittsburgh, PA v Greenwich Ins. Co., 103 AD3d 473, 474 [1st Dept
2013]; W & W Glass Sys., Inc. v Admiral Ins. Co., 91 AD3d 530
[1st Dept 2012]).
Moreover, the inconsistency of this analysis with National

*The Majority's Conclusion*

The majority, of course, has a different interpretation of the policy (see majority op at 8-9).  I will address each of what I perceive to be the three main flaws in its analysis in turn.

First, the majority credits plaintiff's obscurative contention with respect to the relevance of the distinction between "but-for causation" and "proximate cause" to this interpretive exercise (see majority op at 9-10).  As the theory begins, the phrase "caused . . . by" has a *legal meaning* and must refer to either "proximate cause" or "but-for" causation (see id.).  As the theory continues, the policy language "caused, in whole *or in part*, by [BSI's] acts or omissions" (emphasis added)

---

Union Fire Ins. Co. of Pittsburgh, PA v XL Ins. Am., Inc. (2013 WL 1944468 [SD NY, May 7, 2013, No. 12 Civ. 5007(JSR)]) and Dale Corp. v Cumerbland Mut. Fire Ins. Co. (2010 WL 4909600 [ED Pa 2010, Nov. 30, 2010, No. 09-1115]) is of no moment (cf. majority op at 14-15).  In National Union Fire Ins. Co., the Southern District acknowledged that "the phrase 'caused by' does not obviously disclose a singular meaning" (2013 WL 1944468, at *6) -- thereby hinting at an ambiguity in the endorsement -- before "adopt[ing] the reasoning of Dale[] and hold[ing] that 'caused by' requires a showing that [the acts or operations of the named insured] proximately caused the bodily injury [at issue]" (id. at *7).  Dale, however, projected the "proximately caused" language into an endorsement substantively identical to that at issue here (see Dale, 2010 WL 4909600, at *1) based on the "drafter's history" (id. at *7) -- specifically, the "hope[]" of the drafter for a "narrow[] coverage interpretation" (see id. at *5).  Based on our rules of policy interpretation, it is the policy's language (see Lend Lease, 28 NY3d at 681; Consolidated Edison Co., 98 NY2d at 221), not the drafter's explanation of that language, that drives a coverage analysis.

must refer to "proximate cause" because "'but for' causation cannot be partial" (id. at 10).

In my view, however, there is no basis to apply a *legal meaning*, rather than a *plain and ordinary meaning*, to the word "cause" in this context (see Lend Lease, 28 NY3d at 684; Universal Am. Corp., 25 NY3d at 680; cf. majority op at 12 [concluding the "plain and ordinary meaning" of the endorsement communicates a "legal concept"]). In fact, in ascertaining the plain and ordinary meaning of a provision of an insurance policy, this Court has "regarded dictionary definitions as useful guideposts" (Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016] [considering a question of statutory interpretation]; see Universal Am. Corp., 25 NY3d at 681 [relying on a dictionary to determine "the common definition(s)" of various terms contained in a rider central to the coverage question in that case]). The term "cause" refers to, among other things, "something that brings about an effect or a result" (Merriam-Webster Collegiate Dictionary 196 [11th ed 2004]; see Webster's Third New International Dictionary 356 [2002] [defining cause as, among other things, a "thing . . . that brings about an effect . . . ."]; Oxford English Dictionary, http://www.oed.com [accessed May 19, 2017] [defining cause as, among other things, "(t)hat which produces an effect; that which gives rise to any action, phenomenon, or condition"]; Oxford Living Dictionaries, https://en.oxforddictionaries/com/definition/cause [accessed May

16, 2017] [cause is "(a) person or thing that gives rise to an

action, phenomenon, or condition"]; Cambridge Dictionary,

http://dictionary.cambridge.org/us/dictionary/english/cause

[accessed May 16, 2017] [cause is "something without which

something else would not happen"]).  The application of the plain

and ordinary meaning of "cause" to the subject endorsement

compels the conclusion that BSI caused the bodily injuries that

Kenny sustained as a result of the accident (see supra at 8-10),

and that defendants therefore are additional insureds under that

amendment.[7]

        Second, even if legal jargon is relevant to the meaning

of "cause," as the word is used in the subject endorsement (cf.

Universal Am. Corp., 25 NY3d at 680 ["the test to determine

whether an insurance contract is ambiguous focuses on the

---

[7] Two additional points are relevant here.

        First, in lieu of acknowledging and addressing the litany of
dictionary definitions that compel the conclusion that defendants
are entitled to coverage with respect to the underlying matter as
additional insureds under the policy (see supra at 12-13), the
majority advances an unavailing argumentum ad absurdum (see
majority op at 15-16 n 5).

        Second, the majority's point that its "analysis [to the
contrary] should come as no surprise to the industry because the
drafters of the language used here intended it to mean proximate
causation" (majority op at 16; see id. at 17, citing Coverage for
Additional Insured-Vendors: Recent Markdowns by ISO and New
York's High Court, 19-36 Mealey's Litig. Rep. Ins. 11 [2005]) is
of no moment.  Irrespective of whether the reference to
"industry" pertains to the insurance industry or to the
construction industry, the point remains that the intent of the
drafter is immaterial to this analysis.  It is what the drafter
*said*, not what the drafter may have *meant to say*, that guides our
review of this coverage question.

reasonable expectations of the average insured upon reading the policy and employing common speech"] [internal quotation marks omitted]; Cragg, 17 NY3d at 122 ["(i)nsurance contracts must be interpreted according to common speech"]), defendants still would qualify as additional insureds under the policy. To the extent "cause" somehow could be seen to mean "proximate cause" (cf. Royal Indem. Co. v Providence Washington Ins. Co., 92 NY2d 653, 659 [1998] [refusing to read into an insurance policy a condition that does not exist therein]), a reasonable mind could define it as something "that is legally sufficient to result in liability" (Black's Law Dictionary 265 [10th ed 2014] [defining "proximate cause"]; see majority op at 9). This is not, however, to say that "proximate cause" has only one meaning; it also has been defined as "[a] cause that directly produces an event and without which the event would not have occurred" (Black's Law Dictionary 265 [10th ed 2014]).

In view of those competing definitions, projecting the phrase "proximate cause" into the subject endorsement merely would give rise to an ambiguity with respect to the scope of that endorsement (see generally Universal Am. Corp., 25 NY3d at 680) that still would result in coverage for defendants. The majority subtly suggests that any ambiguity should be construed in favor of plaintiff because NYCTA "craft[ed] the additional insured endorsement" and "required that the policy include [the subject] additional insured coverage" (majority op at 16; see generally

State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985]).
The same suggestion is buttressed by reference to the post hoc
plea of the drafter of at least one of the subject endorsements
that such amendment intended to "'preclu[de] . . . coverage for
an additional insured's sole negligence'" (majority op at 17,
quoting Coverage for Additional Insured-Vendors: Recent Markdowns
by ISO and New York's High Court, 19-36 Mealey's Litig. Rep. Ins.
11 [2005]).[8]  The rule, however, remains that ambiguous policy
language is interpreted in favor of the insured (see Lend Lease,
28 NY3d at 682; White, 9 NY3d at 267; Breed v Insurance Co. of N.
Am., 46 NY2d 351, 353 [1978]).[9]  To that end, even assuming that

---

[8] As noted (see supra at 2 n 1), two endorsements are
relevant to this matter.  One such endorsement, on which
plaintiff relies, bears both form No. CG 20 26 07 04 and an
Insurance Services Office (ISO) copyright. The other such
endorsement, on which defendants (and the majority) rely, bears
form No. IFG-I-0160 1100, but has no ISO copyright.
      The point remains that the intent of the drafter is
immaterial to this coverage analysis (see supra at 13 n 7).  The
majority's reference to extrinsic evidence of what apparently was
ISO's intent to "'preclude[] coverage for an additional insured's
sole negligence'" (majority op at 17, quoting Coverage for
Additional Insured-Vendors: Recent Markdowns by ISO and New
York's High Court, 19-36 Mealey's Litig. Rep. Ins. 11 [2005]) in
form No. CG 20 26 07 04, however, is misplaced for an additional
reason: such evidence does not apply to the endorsement on which
defendants and the majority rely.  That amendment does not bear
an ISO copyright, meaning that it apparently was prepared by a
different drafter and therefore may have been based on intent
different from that underlying the "CG" form in question.

[9] There is no contention that the rule that an ambiguity in
the policy should be construed against the insurer that drafted
that compact does not apply on the ground that "the basic concept
and terms [of the endorsement] originated with [defendants], that
[defendants are] sophisticated and [were] instrumental in

"cause," as it is used in the subject endorsement, is ambiguous, we still must conclude that the policy contains coverage for defendants with respect to the underlying matter inasmuch as the accident was "produce[d]" by and "would not have occurred" (Black's Law Dictionary 265 [10th ed 2014] [defining "proximate cause"]) absent BSI's operation of its excavation equipment (cf. Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980] ["There are certain instances . . . where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law"], rearg denied 52 NY2d 784 [1980]).

Third, and finally, the majority misses the mark with its conclusion that the reference to "liability" in the subject endorsement modifies the "caused . . . by" language of that amendment (see majority op at 11-12).[10] Under the plain language of the subject endorsement, the phrase "liability for 'bodily injury'" articulates one of the classes of risks covered by that part of the policy, whereas the phrase "caused . . . by [BSI's]

---

crafting various parts of the agreement, and that [defendants], while not an insurance company, had equal bargaining power and acted like an insurance company by maintaining a self-insured retention" (Cummins, Inc. v Atlantic Mut. Ins. Co., 56 AD3d 288, 290 [1st Dept 2008]).

[10] As (twice previously) noted, the endorsement on which defendants (and the majority) rely provides, in relevant part, that defendants are additional insureds under the policy "with respect to liability for 'bodily injury' . . . *caused, in whole or in part, by [BSI's] acts or omission . . . .*" (emphasis added).

acts or omissions" speaks to the circumstances that trigger that
coverage (see Worth Constr. Co. v Admiral Ins. Co., 10 NY3d 411,
415-416 [2008]).  If plaintiff wanted the endorsement to limit
coverage to circumstances in which the named insured (here, BSI)
was negligent, then it should have written the policy to say as
much.  To the extent the endorsement does not unambiguously
confer additional insured status upon defendants in this instance
(cf. supra at 8-10), the majority's analysis ignoring what at
"worst" (from the prospective of the putative additional
insureds) is an ambiguity in that language overlooks our
teachings that, when there is doubt with respect to the meaning
of an insurance policy, an insurer should revise the policy so as
to leave no doubt as to the meaning of that contract.[11]

---

[11] There are two notable (and intentional) omissions from my
review of this coverage question.  First, I have not compared the
phrase "arising out of" -- which this Court has treated in, among
other cases, Maroney v New York Cent. Mut. Fire Ins. Co. (5 NY3d
467, 472 [2005]) -- to the phrase "caused . . . by."  This case
turns on our interpretation of the instant "caused . . . by"
language, not on the question whether the "caused . . . by"
phrase should or should not have the same meaning as the "arising
out of" language we addressed in Maroney and in other cases.  It
suffices to say that interpreting the phrases "arising out of"
and "caused . . . by" differently does not compel the conclusion
that the latter phrase incorporates a negligence requirement.
     Second, I also have not treated plaintiff's contention that
the volunteer doctrine does not apply here (see Dillon v U-A
Columbia Cablevision of Westchester, 100 NY2d 525, 526 [2003];
National Union Fire Ins. Co. v Ranger Ins. Co., 190 AD2d 395, 397
[4th Dept 1993]; cf. 132 AD3d at 133-134 [addressing the cause of
action for subrogation that plaintiff asserted against NYCTA,
which has no bearing on this case to the extent defendants are
covered under the policy]).  I agree with the majority's implicit
conclusion (see majority op at 18-19) that the question whether

The Effect of the Majority's Ruling

In multi-jurisdictional commercial transactions, New York law frequently is chosen as the governing law based on its stability and predictability. Insurance coverage matters of this nature perhaps are a small subset of the expansive field of commercial litigation.

Similar to "typical" commercial litigation, however, insurance coverage disputes should be resolved through law that is certain and clear. The majority's approach could threaten the stability and sureness of our bedrock rules of insurance policy interpretation. Indeed, it is the benefit of certainty in our rules of interpretation, not concern with the occasionally "unanticipated result[]" (majority op at 17) to which the application of those rules may lead, that should be of paramount importance here.

By extension, that approach could also threaten the likely millions of consumers of insurance in this state by providing a rationale to read into insurance contracts language that is not there. "[I]nsurance in modern society affects an overwhelming part of the population" (68 NY Jur 2d Insurance § 1). To that end, in furtherance of the public interest (see generally Curiale v Ardra Ins. Co., 88 NY2d 268, 276 [1996]), the legislature has, either of its own accord or through latitude

---

to apply the volunteer doctrine here is best left to the Appellate Division.

afforded the current and former incarnations of the State Insurance Department (see Insurance Law § 301), protected consumers who purchase insurance -- such as "auto," "home," and "life" policies -- for everyday needs.  Indeed, that deliberative body has either enacted or countenanced numerous protective rules with respect to minimum standards and mandatory policy language (see e.g. Insurance Law article 34; 11 NYCRR part 52; 11 NYCRR part 60).

For its part, this Court has long promoted certainty and safeguard in crafting its rules of policy interpretation. Insurance contracts are to be viewed through the eyes of the average consumer and deciphered not through "legalese," but by means of plain and common speech.  Moreover, where there is uncertainty with respect to the existence of coverage, we fall on the side of the insured and conclude that coverage exists.

The majority's decision obviously impacts the subject endorsement and similar policy language.  We hope, however, that its reach will not extend more broadly and that its effect will not be destructive.  At best, the decision reflects a departure from, but not a disavowal of, long-held precepts of policy construction.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, plaintiff's motion for summary judgment on the first cause of action granted, defendants' cross motion for summary judgment on the first cause of action denied, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Garcia and Wilson concur.  Judge Fahey dissents and votes to affirm in an opinion in which Judge Stein concurs.


Decided June 6, 2017