[14 NYS3d 377]

THE BURLINGTON INSURANCE COMPANY, Respondent, v NYC
TRANSIT AUTHORITY et al., Appellants.

First Department, August 11, 2015

**APPEARANCES OF COUNSEL**

*Shein & Associates, P.C.*, Syosset (*Charles R. Strugatz* of counsel), for appellants.

*Ford Marrin Esposito Witmeyer & Gleser, L.L.P.*, New York City (*Joseph D'Ambrosio, Andrew I. Mandelbaum* and *John A. Mattoon, Jr.* of counsel), for respondent.

**OPINION OF THE COURT**

FRIEDMAN, J.P.

The outcome of this appeal turns on whether defendants New York City Transit Authority (NYCTA) and Metropolitan Transit Authority (MTA) are entitled to coverage from plaintiff

The Burlington Insurance Company (Burlington) for the subject loss under policy endorsements making defendants additional insureds, in pertinent part, "only with respect to liability for 'bodily injury,' . . . caused, in whole or in part, by [the named insured's] acts or omissions . . . [i]n the performance of [the named insured's] ongoing operations." The record establishes that the injury to the plaintiff in the underlying action (who was not an employee of the named insured) was caused by an "act" of the named insured in its ongoing operations on behalf of defendants, even though the record also establishes that the named insured was not at fault for causing the accident. This Court's most recent precedents have construed additional insured endorsements containing substantially the same "acts and omissions" language as do the endorsements at issue here as providing additional insured coverage where there is a causal link between the named insured's conduct and the injury, regardless of whether the named insured was negligent or otherwise at fault for causing the accident. Adhering to these precedents, we hold that defendants were entitled to coverage as additional insureds in the underlying action under the subject insurance policy. Given that the policy covers defendants for this loss, the anti-subrogation rule bars Burlington from recovering, as subrogee of the City of New York, contractual indemnification from defendant NYCTA, under the lease agreement between the City and NYCTA, for the amounts Burlington has paid to defend and settle the underlying action on behalf of the City.

The underlying personal injury action arose from a subway construction project in Brooklyn, for which defendants NYCTA and MTA engaged nonparty Breaking Solutions to supply concrete-breaking excavation machines and personnel to operate the machines under NYCTA's direction. Pursuant to the insurance requirements of its contract, Breaking Solutions obtained a commercial general liability policy from Burlington for the period from July 17, 2008, through July 17, 2009. The Burlington policy includes endorsements designating NYCTA, MTA and the City (the fee owner of subway properties, which are leased to NYCTA) as additional insureds, with such additional insured coverage restricted to, in pertinent part, liability for bodily injury "caused, in whole or in part," by "acts or omissions" of Breaking Solutions.[1]

---

1. Two separate endorsements to the Burlington policy are in play, although the scope of coverage under each is not materially different for

Also relevant to this appeal is NYCTA's 1953 lease of its transit facilities from the City (the 1953 lease), which contains a provision obligating NYCTA to indemnify the City for liability arising out of NYCTA's control of the leased property. Section 6.8 of the 1953 lease provides that NYCTA

> "covenants that, during the term of this Agreement, it shall be responsible for the payment of, discharge of, defense against, and final disposition of, any and all claims, actions, or judgments, including compensation claims and awards and judgments on appeal resulting from any accident or occurrence arising out of or in connection with the operation, management and control by [NYCTA] of the Leased Property."

On February 14, 2009, an explosion occurred in the Brooklyn subway tunnel that was being excavated by a Breaking Solutions machine. The explosion occurred when the excavator came into contact with an energized electrical cable buried below the concrete. It is undisputed that it had been NYCTA's responsibility to identify and mark or protect hazards in advance, so as to enable the excavator operator to avoid them, and to shut off power to electrical cables in the work area. Thomas Kenny, an employee of NYCTA, was injured when he fell from an elevated work platform as a result of the explosion.

In April 2009, Kenny and his wife (suing derivatively) commenced a personal injury action against the City and Breaking Solutions in the United States District Court for the Eastern

---

purposes of this appeal. The first, on ISO form CG 20 26 07 04, captioned "Additional Insured—Designated Person or Organization," designates NYCTA, but not MTA or the City, as an additional insured, and provides coverage in pertinent part

> "only with respect to liability for 'bodily injury,' . . . caused, in whole or in part, by your [i.e., Breaking Solutions'] acts or omissions or acts or omissions of those acting on your behalf:
> "A. In the performance of your ongoing operations."

The other pertinent endorsement, on form IFG-I-0160 1100, designates NYCTA, MTA and the City as additional insureds and provides coverage in pertinent part

> "only with respect to liability for 'bodily injury,' . . . caused, in whole or in part, by:
> "1. Your acts or omissions; or
> "2. The acts or omissions of those acting on your behalf;
> "in the performance of your ongoing operations for the additional insured."

District of New York (the *Kenny* action). The City was sued as owner of the subway property for alleged violations of its non-delegable duties under Labor Law §§ 240 (1) and 241 (6). NYCTA was not named in the *Kenny* action, presumably because Kenny, as a NYCTA employee, was barred from suing it under the Workers' Compensation Law.

The City, as a putative additional insured under Breaking Solutions' policy, tendered its defense in the *Kenny* action to Burlington. While Burlington accepted the tender, it initially did so subject to a reservation of the right to withdraw from the City's defense, and to deny it indemnification, in the event it emerged that the loss was not caused in whole or in part by Breaking Solutions' acts or omissions. In December 2009, however, NYCTA sent Breaking Solutions a letter warning that outstanding and future payments under its contract would be withheld unless Burlington agreed to indemnify the City (to which, as previously noted, NYCTA had its own contractual indemnification obligation). Thereafter, Burlington stated that it would indemnify the City in the *Kenny* action, essentially withdrawing its previous reservation of rights. As a Burlington executive subsequently explained by affidavit in this action, Burlington withdrew its reservation of rights with respect to the City's coverage in the *Kenny* action "as an accommodation to its policyholder," Breaking Solutions.

In or about March 2010, the City commenced a third-party action against NYCTA and MTA, asserting claims for contractual indemnification pursuant to the 1953 lease and for common-law contribution. Burlington accepted tender of the defense of NYCTA and MTA as putative additional insureds under the policy issued to Breaking Solutions. As it had initially done with respect to the City's defense, Burlington assumed the defense of NYCTA and MTA subject to a reservation of the right to withdraw in the event it emerged that the loss did not fall within the scope of the additional insured coverage. Burlington never withdrew its reservation of rights with respect to NYCTA's and MTA's coverage.

In the course of discovery in the Kenny action, it emerged that, while the Breaking Solutions excavator had caused the explosion by disturbing the buried cable, there had not been any negligence or other fault on the part of the Breaking Solutions employee who operated the excavator. Rather, because NYCTA had failed to identify and mark or protect the cable in preparation for the work, the Breaking Solutions operator had

not known of the cable's presence, and NYCTA's failure to shut off power to the cable led to the explosion. NYCTA's internal documents essentially admitted that it was at fault for the incident. For example, in a February 17, 2009 memorandum, a NYCTA superintendent concluded that "the [excavation equipment] [o]perators were operating the equipment properly and had no way of knowing that the cable was submerged in the invert." Another internal NYCTA memorandum, dated March 16, 2009, concluded that "this accident was primarily due to an inadequate/ineffective inspection process for identifying jobsite hazards involving buried energized cables."

The evidence that Breaking Solutions had not been at fault for the explosion prompted Burlington to disclaim coverage of NYCTA and MTA by letter dated December 10, 2010. Burlington took the position that, because there was no evidence that the explosion had resulted from negligence or other fault on the part of Breaking Solutions, Kenny's injury had not been "caused, in whole or in part," by any "act or omission" of Breaking Solutions (the named insured), and that NYCTA and MTA therefore were not, for purposes of the *Kenny* action, additional insureds of Burlington under the relevant endorsements to Breaking Solutions' policy. Thereafter, in March 2011, Burlington commenced the present action in Supreme Court, New York County, asserting a single cause of action for a declaration that it does not owe NYCTA or MTA coverage with respect to the *Kenny* action under the Breaking Solutions policy.

In September 2011, the federal court granted a motion by the plaintiffs in the *Kenny* action to dismiss their own claims against Breaking Solutions with prejudice.[2] In the same order, the court also dismissed from the *Kenny* action, without prejudice, the City's third-party claims against NYCTA and MTA, for the purpose of expediting the adjudication of the main action against the City. The City's and Breaking Solutions' cross claims against each other were dismissed pursuant to stipulation.

In June 2012, Burlington settled the *Kenny* action on behalf of the City, paying the plaintiffs $950,000. The following month, Burlington moved for leave to amend its complaint in this action to add a second cause of action, seeking to recover, as sub-

---

2. NYCTA and MTA, which were by then paying for their own defense in the *Kenny* action, did not object to the dismissal of Breaking Solutions from the case. NYCTA also consented to the settlement in its capacity as holder of a lien for the workers' compensation benefits it had paid Kenny.

rogee of the City's contractual indemnification rights under the 1953 lease, the amounts Burlington had expended on behalf of the City in the settlement and defense of the *Kenny* action. NYCTA and MTA opposed the motion to amend the complaint and cross-moved for summary judgment on the declaratory judgment claim pleaded in the original complaint. While that motion and cross motion were still pending, Burlington made a second motion for summary judgment declaring that it does not owe NYCTA and MTA coverage under the Breaking Solutions policy because Kenny's injury was not caused by any negligence on the part of Breaking Solutions.

In the first decision under review, which was first entered as an order on December 28, 2012, and then as a judgment on January 9, 2013, Supreme Court granted Burlington leave to amend the complaint to add a contractual indemnification claim against NYCTA (but not MTA, which is not a party to the 1953 lease) and summary judgment declaring that NYCTA and MTA were not covered by the Breaking Solutions policy for purposes of the *Kenny* action. The court also denied the cross motion by NYCTA and MTA for summary judgment in their favor on the coverage issue. The court first held that NYCTA and MTA were not additional insureds under the Breaking Solutions policy for purposes of the *Kenny* action, relying on this Court's decision in *Crespo v City of New York* (303 AD2d 166 [1st Dept 2003]) (more fully discussed below), which construed "acts and omissions" language in an additional insured endorsement. The court also rejected NYCTA's contention that Burlington could not be subrogated to the City's indemnification rights because, assuming the correctness of Burlington's position on the coverage issue (with which the court had agreed), Burlington's settlement of the *Kenny* action on the City's behalf would have been voluntary.[3] Having found that NYCTA and MTA were not additional insureds for purposes of the *Kenny* action, the court rejected their alterna-

---

**3.** With regard to NYCTA's contention that Burlington's payment to settle the *Kenny* action had been voluntary, the court observed:

"This argument overlooks the circumstance that, at NYCTA's insistence that Breaking Solutions indemnify the City, Burlington waived its rights to dispute that the City was an additional insured under the additional insured endorsement. . . . Given that [NYCTA] insisted that Burlington waive its rights and indemnify the City, [NYCTA] shall not be heard to complain of the consequences of the waiver" (*Burlington Ins. Co. v NYC Tr. Auth.*, 38 Misc 3d 1205[A], 2012 NY Slip Op 52370[U], *11 [Sup Ct, NY County 2012]).

tive argument that the anti-subrogation rule bars Burlington from pursuing the contractual indemnification claim as the City's subrogee.[4]

In the second decision and order under review, entered on December 19, 2013, the court, insofar as relevant to this appeal, granted Burlington's motion for partial summary judgment as to liability in its favor on its cause of action against NYCTA, as subrogee of the City, for contractual indemnification pursuant to the 1953 lease. The court directed entry of judgment in favor of Burlington in the amount of its $950,000 settlement payment, with 3% interest from June 2012. The court also granted Burlington summary judgment on its claim for indemnification for the City's defense costs, in an amount to be determined after further discovery.

As stated at the outset of this opinion, we reverse on the ground that, under this Court's recent precedents, and contrary to Supreme Court's view, NYCTA and MTA are additional insureds under the subject policy for purposes of a loss that was "caused, in whole or in part," by an "act[ ] or omission[ ]" of the named insured, even though the named insured's causal "act[ ]" was not negligent. It is undisputed that Kenny's injury was causally connected to an "act[ ]" of the named insured, specifically, the Breaking Solutions excavator's disturbance of the buried electrical cable, which triggered the explosion that led to Kenny's fall.[5] While it is true that, because NYCTA had not warned the Breaking Solutions' operator of the cable's presence, Breaking Solutions' "act[ ]" did not constitute negligence, this does not change the fact that the act of triggering the

---

4. We do not here summarize Supreme Court's reasoning insofar as it addressed arguments we find it unnecessary to reach for purposes of deciding this appeal.

5. Although Burlington has argued vigorously throughout this action that Breaking Solutions did not act negligently, nowhere in the record or in its appellate brief do we understand Burlington to have argued that there was no causal connection between the explosion triggered by the Breaking Solutions excavator and Kenny's fall. Kenny's deposition testimony certainly supports the view that the explosion was a direct cause of his fall. Kenny testified that, while he was working on the elevated platform (called a bench wall) in the subway tunnel, he sensed "a foam of heat, like a flash of light occurred with a big explosion. That's when I felt the heat come from like the ceiling behind me and I lost my balance and I landed on the invert [the foundation of the tunnel] heels first." He also testified that, when he arrived at the hospital, he told the triage nurse that "I was just in an explosion and I fell from a bench wall." Similarly, he testified that he told the track supervisor that, "[a]t the time of the explosion, it caused me to lose my balance and fall off the wall, off the bench wall."

explosion, faultless though it was on Breaking Solutions' part, was a cause of Kenny's injury. The language of the relevant endorsement, on its face, defines the additional insured coverage afforded in terms of whether the loss was "caused by" the named insured's "acts or omissions," without regard to whether those "acts or omissions" constituted negligence or were otherwise actionable.

In at least three decisions issued within the three years before this appeal was argued (although not cited by the parties), this Court has held that, where a policy endorsement (like the ones here at issue) extends coverage to additional insureds for losses "caused by" the named insured's "acts or omissions" or "operations," the existence of coverage does not depend upon a showing that the named insured's causal conduct was negligent or otherwise at fault. In *W & W Glass Sys., Inc. v Admiral Ins. Co.* (91 AD3d 530 [1st Dept 2012]), for example, where the relevant endorsement provided that a general contractor was covered under its subcontractor's policy " 'only with respect to liability *caused by* [the subcontractor's] ongoing operations performed for that [additional] insured' " (*id.* at 530 [emphasis added]), we held that "[t]he language in the additional insured endorsement granting coverage *does not require a negligence trigger*" (*id.* at 531 [emphasis added]).[6] Similarly, in *National Union Fire Ins. Co. of Pittsburgh, PA v Greenwich Ins. Co.* (103 AD3d 473 [1st Dept 2013]), where the additional insured endorsement applied to "bodily injury caused, in whole or in part, by [the named insured's] acts or omissions or the acts or omissions of those acting on [the named insured's] behalf" (*id.* at 474), in holding the additional insured covered for the loss in question, we expressed the view that the phrase "caused by" "does not materially differ from the . . . phrase, 'arising out of' " (*id.* [internal quotation marks omitted]), necessarily excluding any requirement of a negligence trigger for coverage. Finally, in *Strauss Painting, Inc. v Mt. Hawley Ins. Co.* (105 AD3d 512 [1st Dept 2013], *mod on other grounds* 24 NY3d 578 [2014]), we expressly held that a finding of negligence against the named insured was not required to support additional insured coverage where

---

6. Notably, while the endorsement at issue in *W & W Glass* "further provided that it 'does not apply to liability caused by the sole negligence of the person or organization [named as an additional insured]' " (91 AD3d at 530), Breaking Solutions' Burlington policy contains no such limitation on additional insured coverage.

"[t]he additional insured endorsement speaks in terms of 'acts or omissions,' not negligence. Thus, in the unlikely event that it would be found that some nonnegligent act by plaintiff [the named insured] caused the accident, the Met [the additional insured] would still be entitled to coverage under the additional insured endorsement" (*id.* at 513).[7]

Notably, last year, in *Liberty Mut. Ins. Co. v Zurich Am. Ins. Co.* (2014 WL 1303595, 2014 US Dist LEXIS 42471 [SD NY, Mar. 28, 2014, No. 11-Civ-9357 (ALC) (KNF)]), the Federal District Court considered the question of whether, under New York law, the negligence of the named insured is a prerequisite for additional insured coverage under an endorsement restricting coverage to losses "caused, in whole or in part, by . . . [the named insured's] acts or omissions; or . . . [t]he acts or omissions of those acting on [the named insured's] behalf; in the performance of [the named insured's] ongoing operations for the additional insured(s)" (2014 WL 1303595, *2, 2014 US Dist LEXIS 42471, *6 [internal quotation marks omitted]). The *Liberty Mutual* court concluded—expressly relying on our above-cited decisions in *W & W Glass*, *National Union* and *Strauss Painting*—that "[i]t is not necessary to determine that Schindler [the named insured] was somehow negligent as any act or omission by Schindler or someone acting on its behalf will suffice [to trigger additional insured coverage] if it was 'in the performance of [Schindler's] ongoing operations for the additional insured' " (2014 WL 1303595 *5, 2014 US Dist LEXIS 42471, *14-15).

More recently, in *Kel-Mar Designs, Inc. v Harleysville Ins. Co. of N.Y.* (127 AD3d 662 [1st Dept 2015]), this Court reaffirmed that endorsement language predicating additional insured coverage on "liability caused, in whole or in part, by the acts or omissions of [the named insured]" (*id.* at 663 [internal quotation marks omitted]) does not require a showing of negligence on the part of the named insured. We explained:

"The loss at issue in the underlying action—a personal injury suffered by an . . . employee [of

---

**7.** The *Strauss Painting* record shows that the additional insured endorsement in that case afforded coverage, in pertinent part, "only with respect to liability for 'bodily injury,' . . . caused, in whole or in part, by . . . [the named insured's] acts or omissions." This is essentially the same language at issue here. As indicated, the Court of Appeals' modification of our decision in *Strauss Painting* was on a different issue, and the Court of Appeals did not discuss this aspect of our *Strauss Painting* decision.

the named insured, Arcadia] when he lost his footing on a stairway while working on a construction project—resulted, at least in part, from 'the acts or omissions' of the Arcadia employee while performing his work (i.e., his loss of footing while on the stairway), regardless of whether the Arcadia employee was negligent or otherwise at fault for his mishap" (*id.*, citing *Strauss Painting* and *W & W Glass*).

While the loss in the present case does not involve an injury to an employee of the named insured (Breaking Solutions), given that a Breaking Solutions employee operated the machine that set off the explosion, here, no less than in *Kel-Mar*, the loss "resulted, at least in part, from 'the acts or omissions' of [Breaking Solutions, the named insured] . . . , regardless of whether [Breaking Solutions] was negligent or otherwise at fault for [the] mishap."

In reaching a contrary conclusion, Supreme Court relied on an older decision of this Court, *Crespo v City of New York* (303 AD2d 166 [1st Dept 2003], *supra*), where we held that the additional insured's right to indemnification could not be determined without first determining whether the loss "was caused by negligence by S&P [the named insured]" (*id.* at 167). In our view, *Crespo*, even without regard to the subsequent countervailing authority, is distinguishable. The additional insured endorsement in *Crespo* provided coverage "only to the extent that [the additional insured] is held liable *for* [S&P's] acts or omissions" (*id.* [emphasis added and internal quotation marks omitted]), language suggesting that the wrongful conduct of the named insured must provide the basis for the imposition of liability on the additional insured. In any event, to the extent *Crespo* conflicts with this Court's more recent authority, we are obliged to follow the latter.[8]

---

8. Also distinguishable is *American Guar. & Liab. Ins. Co. v CNA Reins. Co.* (16 AD3d 154 [1st Dept 2005]), where we held that the putative additional insured, a landlord, was covered under its security contractor's liability policy "only for injuries arising from security guard negligence" (*id.* at 155). The plaintiff in the personal injury action underlying *American Guarantee* was a tenant who had been shot by intruders. To accept the landlord's position in *American Guarantee* would have been tantamount to treating the security contractor as the cause of any intrusion into the building its employees failed to prevent. In this case, NYCTA's and MTA's claim to additional insured coverage is based on an affirmative act by Burlington's named

Although it may be that the insurance service institution that drafted the endorsement forms defining additional insured coverage in terms of "acts or omissions" intended that language to restrict coverage to liability arising, at least in part, from the fault of the named insured (*see* William Cary Wright & Clifford Shapiro, *Construction Contract Indemnities, the "Insured Contract," and Additional Insured Coverage*, Construction Insurance: A Guide for Attorneys and Other Professionals, at 162-163, 175 n 94 [2011]), the fact remains that no words referring to the negligence or fault of the named insured were included in the endorsement itself. We construe only the actual language used in the policy forms itself, without reference to extrinsic evidence of the subjective intentions of those who drafted the forms years before the parties contracted.

■ For the reasons discussed above, Breaking Solutions' Burlington policy affords NYCTA coverage as an additional insured for liability arising from the injury to Kenny. It necessarily follows that the anti-subrogation rule bars Burlington from recovering, as the City's subrogee, contractual indemnification from NYCTA under the 1953 lease for amounts expended in the settlement and defense of the *Kenny* action on behalf of the City (*see North Star Reins. Corp. v Continental Ins. Co.*, 82 NY2d 281, 294 [1993] ["An insurer . . . has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered"]).

In view of the foregoing, we need not reach the remaining issues discussed by the parties.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Michael D. Stallman, J.), entered December 28, 2012 and January 9, 2013, which granted plaintiff Burlington summary judgment on its first cause of action declaring that Burlington owes defendants NYCTA and MTA no coverage in the underlying personal injury action, granted Burlington leave to amend its complaint to assert a second cause of action against NYCTA for contractual indemnification as equitable subrogee of the City of New York, and denied defendants' cross motion for summary judgment on the first cause of action, and the order of the same court and Justice, entered December 19, 2013, which, to the extent appealed from, granted Burlington's motion for summary judg-

---

insured that triggered the loss, not on the named insured's failure to prevent wrongdoing by an unrelated third party.

ment for contractual indemnification against NYCTA and directed judgment in favor of Burlington in the amount of $950,000, plus prejudgment interest, fees and costs, should be reversed, on the law, with costs, Burlington's motions for summary judgment and to amend the complaint denied, and defendants' cross motion for summary judgment on the first cause of action granted to the extent of declaring that defendants were entitled to coverage in the underlying personal injury action as additional insured under Burlington's policy number HGL0019305 issued to Breaking Solutions, Inc. The Clerk is directed to enter judgment accordingly.

MOSKOWITZ, FEINMAN, GISCHE and KAPNICK, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered December 28, 2012 and January 9, 2013, and order, same court and Justice, entered December 19, 2013, reversed, on the law, with costs, Burlington's motions for summary judgment and to amend the complaint denied, and defendants' cross motion for summary judgment on the first cause of action granted to the extent of declaring that defendants were entitled to coverage in the underlying personal injury action as additional insured under Burlington's policy number HGL0019305 issued to Breaking Solutions, Inc. The Clerk is directed to enter judgment accordingly.